Hornblower, C. J.
The accounts of William Hyer, guardian of Sarah Ann Wilmurt now Morehouse, of the county of Middlesex, were reported to and settled by the Orphans’ Court, on the 4th September 1830, and a balance decreed against the guardian of eighty-four dollars and fifty-five cents. At the same term a rule was obtained, at the instance of the guardian, opening the account, and ordering a re-hearing. The case was continued before the court until March term 1832; when the account was re-stated, and after correcting, what were supposed to be errors and omissions in the former account, it was again passed, and a balance found and decreed in favor of the accountant, of six hundred and seven dollars and six and a quarter cents.
Thus matters stood until September term, 1837, a period of five, years and six months; when, upon the application of More-house and his wife, he having married the ward, a rule was entered, that they be permitted to show cause why the account should be opened. This seems to have been a very useless rule, and I do not see by the record, that it was ever acted under. The matter was permitted to remain in statu quo, until December term 1841, a further period of four years and three months; when, at the instance of Morehouse and wife, an order was made, that the decree of March term 1832, be so far opened, that Sarah Hyer, administratrix of William Hyer the late guardian (he having died in the mean time) show cause why that decree should not he finally opened; and that all proceedings thereon be stayed. This rule appears by the record to have been entered by the consent of parties. If this was so Mrs. Hyer ought not now *127 to complain, that she was called upon to maintain the former decree of the court, instead of being permitted to repose herself upon it, until her adversary could impeach it for fraud or mistake. Her counsel however, in his brief, says that consent extended only to the stay of proceedings; but the record does not read so, and we must take that for our guide.
In March term, the proctor for Morehouse and wife, moved for and obtained an ex parte rule, that both parties be permitted to take testimony.
Whether any testimony was taken under that rulé, or what the testimony was, does not appear; but in June term 1842, the court say, as appears by their return, that “ after hearing the evidence and the arguments of counsel, and after due notice of the hearing proved to have been served on Sarah Hyer administratrix &c. It is, on &c. ordered, adjudged and decreed, that the said decree of March term 1832, be set aside and for nothing holden ; and that the decree of September term 1830, do stand in full force between the parties.”
Of the merits of this decision, or which account was the just and true one, we of course can give no opinion ; the only question for our consideration is, whether the proceedings have been in conformity to law. By the thirty-second section of the act of 1820, Elm. Dig. 365, art. 21, the sentence or decree of the Orphans’ Court on the final settlement and allowance of such accounts, is declared to be conclusive upon all parties; and shall exonerate the accounting party from all demands beyond the amount of such settlement, except for assets which may subsequently come to his hands; or where the party applying for a resettlement shall prove some fraud or mistake therein, to the satisfaction of the Orphans’ Court.
This latter clause of the section just quoted, undoubtedly authorizes the Orphans’ Court, upon a proper case made before it, to open an account, and correct any mistake that has intervened, or to obviate the consequences that may have resulted from the fraudulent conduct of either party. Nor does the statute limit any time, within which such fraud or mistake, must be discovered or corrected. Nevertheless the statute must receive a reasonable construction; and proceedings under it must be conducted upon some settled principles. A final settlement of accounts, *128 and a solemn decree of the court establishing a balance one way or the other, must have some force and substance about it. If it may be opened on mere motion, at any time; or if the accountant may, from time to time, be called upon to show cause why it should not be opened and re-stated, it is no settlement at all; and accounting parties in their lifetime, or their representatives after them would never know when their liabilities were at an end.
In my opinion therefore, a party, seeking to open an account, ought, primarily and before any rule opening the account, or calling on the other party to show cause &c. is made, to point out specifically, wherein the fraud or the mistake complained of consists, and to lay such evidence of it before the court, as to make out at least a prima facie case ; and if the court think proper, upon such complaint, to give the parties a hearing, the bur-then of proof must lie entirely on the complaining party ; and the account and decree must stand, until overthrown by evidence of fraud or mistake.
I am further of opinion, that if fraud or mistake is established to the satisfaction of the court, the original account ought not to be mutilated or set aside; but a new account stated making the ■footings of the old one the basis of such new account; adding thereto or deducting therefrom such sums, as the discovery of the fraud or mistakes show ought to have been charged or credited to the accountant, thus showing upon the face of the account, the particulars in which the former account had been defectively or improperly stated. As to the time within which such application ought to be entertained; as the statute prescribes no limit, it must depend upon the sound discretion of the court and the circumstances of each particular case, considered in reference .to the nature and extent of the account; the condition of the parties; and the character and evidence of the fraud or mistake complained of. .
The objection therefore, simply from the length of time that had elapsed in this cause cannot be sustained; and it is manifest upon inspecting the papers sent up here, that the whole proceeding has been irregular, and not in analogy with any settled rules of law. In the first place, the representative of the guardian, nearly ten years after the account had been settled, is called upon to sustain *129 that account or show cause why it should not be set aside. This was reversing the state of parties, and putting the onus where it ought not to have been put. Again, it does not appear that either the accountant in his lifetime or bis administratrix afterwards, ever had pointed out to them, wherein the fraud or mistake complained of consisted; nor does it appear by the decree of June 1842, that any fraud or mistake was proved; but having “ heard the evidence and the arguments of counsel,” the court proceed at once to “ order &c. that the decree of March term 1832, be set aside and for- nothing holden; and that the decree of September term .1830, should stand in full force.” No reason is assigned for this sweeping decree; nor any facts adjudged to have béen proved as the foundation of the decision. If the record had set forth, that after hearing the evidence &e. it appeared to the satisfaction of the court, that the account and decree of March term 1832, had been allowed and made by fraud or surprise, it might present a different question. But upon the record as it now stands, I am of opinion, that the decree of March term 1842, be reversed and for nothing holden, and that the record be remitted &c.

Judgment accordingly.

Nevicts, J. absent, holding the Warren County Circuit.
Cited in Engle, Ad., v. Crombie, Ad., 1 Zab. 617.